UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL URBAN LEAGUE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:15-CV-3617-B |
| | § | |
| | § | |
| URBAN LEAGUE OF GREATER DALLAS | § | |
| AND NORTH CENTRAL TEXAS, INC., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff National Urban League's Motion for Summary Judgment, Doc. 111. For the reasons that follow, the Court **GRANTS** Plaintiff's Motion.

I.

BACKGROUND

A. *Factual*[1]

This case arises out of the Urban League of Greater Dallas's (ULGD) disaffiliation from the National Urban League (NUL). NUL filed suit for breach of contract and trademark infringement claims after ULGD allegedly violated several provisions of its affiliation contract, resulting in disaffiliation from NUL. Disaffiliation requires the former affiliate to cease use of NUL trademarks, but NUL claims ULGD continued to use NUL trademarks after disaffiliation. ULGD claims that

---

[1]The Court draws its factual history from the pleadings and the summary judgment record. Any contested fact is identified as the contention of a particular party.

- 1 -

NUL failed to comply with the contract's procedures for disaffiliation; therefore, it is still entitled to use NUL trademarks. NUL now seeks summary judgment on its breach of contract and trademark infringement claims.

The National Urban League is a civil-rights organization that operates across the country to "advance the rights of African-Americans and those in need of economic empowerment." Doc.112, Pl.'s Mem. Summ. J., 2. NUL has affiliates in thirty-six states that operate in local markets to advance the organization's goals. Doc. 1, Pl.'s Compl., ¶ 8. Each NUL affiliate is an independent nonprofit organization licensed in its state of operation and governed by its own board of directors. *Id.* at ¶¶ 9–10. Organizations interested in affiliating with NUL undergo a rigorous screening process by NUL's Affiliate Services and Board of Trustees. Doc. 113-1, App. Pl.'s Mem. Summ. J., 0002–3, ¶ 6. Once approved, an applicant enters into "a written agreement titled 'Terms of Affiliation'" with NUL. *Id.* at ¶ 7. This agreement requires all affiliates "to adhere to the (a) Terms of Affiliation, (b) Affiliate Policies, Standards, and Procedures, and (c) Urban League Movement Mission Statement." *Id.* at ¶ 8. The Terms of Affiliation also allows affiliates to use two of NUL's service marks: (1) the name "Urban League" and (2) a logo consisting of an equality symbol within a circle. Doc.112, Pl.'s Mem. Summ. J., 3. Both these marks are registered with the United States Patent and Trademark Office. Doc. 113-1, Exs. 1 A-B, App., 0023–26. An uncured failure to comply with these agreements and regulations is grounds for disaffiliation, which includes a prohibition on further use of NUL's registered service marks. Doc. 113-1, Ex. 1-C, App., 0032–33.

The Urban League of Greater Dallas first became an NUL affiliate in 1967 and last renewed its affiliation in 2014. Doc.112, Pl.'s Mem. Summ. J., 3. In 2014, ULGD began experiencing difficulties with its internal operations, which resulted in its failure to maintain proper financial

records and perform yearly audits, as well as instability in its board of governors. *Id.* at 4–7. For example, ULGD failed to submit invoices for a reimbursable federal grant.[2] *Id.* at 4. Throughout 2014 and 2015, NUL staff made eight visits to Dallas to provide technical assistance and supply ULGD with two corrective-action plans designed to help ULGD remedy its organizational problems. *Id.* at 5. This assistance, however, was unsuccessful and NUL claims ULGD's continued noncompliance resulted in violations of several provisions of the Terms of Affiliation. Specifically, NUL claims ULGD: (1) failed to pay NUL annual dues; (2) failed to submit to NUL financial statements, (3) failed to submit required forms to the IRS, (4) failed to prepare a 2014 audit, and (5) hired, and then rehired, a CEO who did not meet NUL educational requirements and was not approved by NUL. *Id.* at 7. In addition, NUL claims ULGD's failure to abide by NUL's requirements affected goodwill towards NUL in the Dallas community. When ULGD did not complete its 2013 audit, for instance, United Way of Dallas, the Texas Department of Housing and Community Affairs, and the United States Veterans Affairs Administration all suspended their funding of ULGD. Doc. 113-1, App., 0012, ¶ 34.

In March 2015, NUL began the disaffiliation process because of ULGD's alleged continued failure to remedy its noncompliance. NUL sent ULGD a Notice of Default and Opportunity to Cure in March 2015, a Notice of Noncompliance in April 2015, a second Notice of Noncompliance in June 2015, and placed ULGD on probation on July 3, 2015, with the opportunity to cure its noncompliance by July 13. Doc.112, Pl.'s Mem. Summ. J., 8–9. When ULGD failed to do so by July 13, NUL informed ULGD that it would recommend disaffiliation to the NUL Board of Trustees. *Id.*

---

[2] NUL claims ULGD's failure to submit these invoices prevents it from obtaining reimbursement from HHS for expenses relating to the federal program. *Id.*

at 9. On July 15, the Board voted to disaffiliate ULGD. *Id.* ULGD was notified in writing on July 23 that the Board voted in favor of disaffiliation and was informed it was required to "promptly cease the use in any way of the phrase 'Urban League' or brand services logo as part of its name or in connection with its operation." Doc. 113-1, Ex 1-K, App., 0095–96.

After the disaffiliation, ULGD pursued an administrative appeal of the decision. Doc.112, Pl.'s Mem. Summ. J., 9. The appeals board, however, upheld the disaffiliation. *Id.* The appeals board's decision also reiterated that ULGD was to "immediately cease and desist from using the equality symbol and title 'Urban League' in any manner." Doc. 113-1, Ex. 1-L, App.,105. But ULGD continued to use the NUL marks on its website and social media. Doc.112, Pl.'s Mem. Summ. J., 12.

*B. Procedural*

In November 2015, NUL filed suit, alleging breach of contract claims for ULGD's failure to comply with the Terms of Affiliation and trademark infringement claims for ULGD's continued use of the NUL name and logo following disaffiliation. Doc. 1, Pl.'s Compl., ¶¶111–61. It also sought a preliminary injunction prohibiting ULGD's continued use of the NUL marks. *Id.* at ¶161. In December 2015, this Court issued a preliminary injunction, finding that NUL had established substantial likelihood of success on the merits for the breach of contract and trademark infringement claims. Doc.112, Pl.'s Mem. Summ. J., 10. The case was stayed pending ULGD's ultimately unsuccessful appeal of the preliminary injunction to the Fifth Circuit, and on March 27, 2017, NUL filed its motion for summary judgment. *Id.* at 11; Doc. 111, Pl.'s Mot. Summ. J.

NUL seeks summary judgment on six counts: (I) breach of contract; (II) federal trademark infringement under 15 U.S.C. § 1114; (III) false designation of origin and unfair competition under 15 U.S.C. § 1125; (IV) common law trademark infringement; (VI) common law unfair competition,

and; (VII) state trademark infringement under Tex. Bus. & Com. Code § 16.102. Doc. 111, Pl.'s Mot. Summ. J., 2. NUL does not seek summary judgment on its claims for federal or state trademark dilution (Counts V and VIII) and notes it will withdraw its dilution claims should this Court grant summary judgment on the rest of its claims. *Id.* at 3. Finally, NUL seeks a permanent injunction to enjoin ULGD from future use of the NUL marks. *Id.*

## II.

## LEGAL STANDARD

Summary judgment is proper if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The substantive law identifies which facts are material, and only a dispute over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the facts and the inferences drawn from the facts in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Once the summary judgment movant has met his burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam). A non-movant may not simply rely on the Court to sift through the record to find a fact issue but must point to specific evidence in the record and articulate precisely how that evidence supports the challenged claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Moreover, the evidence the non-movant provides must raise more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. This evidence must be such that a jury could reasonably find in the non-movant's

favor. *Anderson*, 477 U.S. at 248. If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1075.

## III.

## ANALYSIS

*A. ULGD's Miscellaneous Objections to NUL's Motion for Summary Judgment*

    1.     Objections to the Form of the Motion and Memo

ULGD alleges that NUL's motion and its memo in support of its motion do not comply with the procedural requirements of Federal Rule of Civil Procedure 56(c). Doc. 116, Def.'s Resp. to Pl.'s Mem. Summ. J., 6–15. These allegations are without merit.

First, ULGD claims that NUL's motion does not contain any statements of fact or elements of the claims for which it seeks summary judgment, but instead indicates this information will be provided in its memo in support of its motion. Doc. 116, Def.'s. Resp., 6. ULGD is correct, but it is unclear why this is problematic. Rule 56(c) is silent on the matter, but the local rules specifically provide that the elements of the claims for which a party seeks summary judgment may be "set forth in the party's brief." N.D. Tex. Civ. R. 56.3(b). NUL's memo in support of its motion states the elements of its breach of contract and trademark infringement claims. Doc.112, Pl.'s Mem. Summ. J., 15, 20.

Second, ULGD claims that it cannot properly respond to NUL's memo because the statement of facts is merely "a sequence of unnumbered paragraphs containing multiple sentences," which allegedly prevents ULGD from understanding which facts are material. Doc. 116, Def.'s. Resp., 6. ULGD is correct that NUL's memo does not contain numbered statements of facts, but, again, the Court fails to understand the problem. NUL's brief complies with Rule 56(c)(1)(A)'s requirement

that a party support its factual position by citing to particular parts of the record and neither Rule 56(c) nor the local rules require a party to format its brief in numbered paragraphs. The Court sees no reason why either the format or the content of NUL's brief prevents ULGD from offering a cogent response.

2. Objections to Lessard and Schwarz Affidavits

ULGD spends nine pages of its brief objecting to factual statements in the affidavits of Herman Lessard, Senior Vice President of Affiliate Services at NUL, and Rachel Schwarz, counsel for NUL. Doc. 116, Def.'s. Resp., 6–15. The Court overrules all objections.

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge [and] set out facts that would be admissible in evidence" Fed. R. Civ. P. 56(c)(4). First, ULGD claims that portions of Lessard's affidavit are not based on personal knowledge. Doc. 116, Def.'s. Resp., 7. ULGD does not, however, point to any specific portions of the affidavit to support its allegation. ULGD then objects to almost every statement in Lessard's affidavit, supplemental affidavit, and Schwarz's declaration on the basis that the facts in each statement are disputed either because ULGD cannot "confirm or deny the statement" or because "there is no evidence to support the assertion."[3] *Id.* at 7–15. These objections are conclusory allegations and "[u]nsubstantiated assertions are not competent summary judgment evidence," nor does the district court have a "duty to sift through the record in search of evidence to support a party's opposition to summary

---

[3] For many of these evidentiary objections, ULGD concludes its objection by listing Federal Rules of Evidence 801, 901, and 1002. Doc. 116, Def.'s Resp., 9–12. The Court assumes ULGD believes the statements corresponding to these objections are inadmissible based on those evidentiary rules but ULGD fails to make this argument. Therefore, the Court declines to comb through each of Lessard's statements to examine whether ULGD's implied evidentiary objections have merit. ULGD's hearsay objections to evidence of NUL's registration of its service marks are addressed in section C(1).

judgment." *Ragas*, 136 F.3d at 458 (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir. 1992)).

Even where ULGD includes more detailed reasons for its objections, the objections fail to point to specific evidence to demonstrate the facts asserted in the affidavit are actually in dispute. For example, ULGD objects to Lessard's characterization of the May 4, 2015, meeting between NUL and ULGD as a hearing because it claims ULGD was unaware a hearing would occur during the meeting. Doc. 116, Def.'s. Resp., 8. But ULGD fails to produce any evidence to support its claim that ULGD knew of the meeting but was unaware of a hearing. And in fact, the April 15, 2015, letter to ULGD confirming the May 4 meeting refers to the meeting as a hearing four times. Doc. 113-2, Ex. 2-D, App., 0142–43.

Because ULGD's objections fail to introduce any specific evidence that would create a genuine issue of material fact, this Court rejects all of ULGD's objections to the facts presented in the Lessard affidavits and Schwarz declaration.

*B. Breach of Contract*

NUL claims ULGD breached multiple provisions of the Terms of Affiliation, which is grounds for disaffiliation and moves for summary judgment on its contract claim. Doc.112, Pl.'s Mem. Summ. J., 16–18. ULGD counters that even if it did breach the Terms of Affiliation, NUL also breached the Terms of Affiliation and the Affiliate Policies, Standards, and Procedures by failing to provide adequate assistance to ULGD or proper notice of noncompliance and disaffiliation. Doc. 116, Def.'s. Resp., 4. Therefore, ULGD claims, disaffiliation was not proper and ULGD may continue to use NUL's marks. *Id.* at 5.

To establish breach of contract, the plaintiff must show "(1) the existence of a valid contract,

(2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007); *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 666 (Tex. App.—Fort Worth 2010, no pet.).

There is no dispute about elements one, three, or four. Therefore, the only issue is whether NUL performed under the contract.

ULGD makes three arguments regarding NUL's alleged non-performance. Doc.116, Def.'s Resp., 18–19. ULGD claims: (1) the Terms of Affiliation required NUL to send written notice from the Department of Affiliate Services entitled "Notice of Noncompliance" but NUL's written notice was incorrectly titled and sent from the NUL CEO; (2) NUL failed to perform under the Terms of Affiliation by failing to disburse $20,000 due to ULGD, which in turn creates an issue of fact about whether ULGD could have cured its non-compliance with those funds, and (3) NUL failed to provide ULGD with an executed Board Resolution confirming the Board's vote to disaffiliate ULGD. *Id.*

ULGD's first argument fails. ULGD is correct that the Affiliate Policies, Standards, and Procedures document requires NUL to send a Notice of Noncompliance from the Department of Affiliate Services when an affiliate is non-compliant and that NUL's first notice of noncompliance on March 27, 2015, was titled "Notice of Default and Opportunity to Cure" rather than "Notice of Noncompliance" and was signed by the NUL CEO rather than a member of the Department of Affiliate Services. Doc. 113-1, Ex. 1-D, App., 0052–53; Ex. 1-E, App., 0058–59.[4] NUL did, however,

---

[4] ULGD claims that NUL distributed the March 27 letter to the media in an attempt to punish ULGD, and that the resulting media coverage damaged ULGD's reputation. Doc. 116, Def. Resp., 5,19.

send a second notice to ULGD on June 18, 2015, that was titled "Notice of Noncompliance" and signed by the Senior Vice President of Affiliate Services. Doc. 113-1, Ex. 1-G, App., 0065–66. [5]

ULGD's second argument also lacks merit. ULGD alleges that NUL admitted in its complaint that it failed to disburse $20,000 to ULGD, but ULGD misreads NUL's statement. Doc. 116, Def.'s Resp.,19. NUL's complaint states that ULGD had $20,000 in payable expenses for which it had failed to submit to NUL an invoice for payment. Doc.1, Pl. Compl.,¶ 26. The complaint nowhere states that NUL owed funds to ULGD that it failed to disburse and ULGD has presented no evidence that this was the case.

Finally, ULGD's third argument fails. The Affiliate Policies, Standards, and Procedures does not require the Board to send approved disaffiliation resolutions to affiliates. The document requires the Board to notify the affiliate of the Board's decision regarding disaffiliation, which the Board provided to ULGD on July 23, 2015. Doc. 113-1, Ex. 1-D, App., 0053; Ex. 1-K, App., 0095–96. ULGD argues that NUL's failure to introduce a signed Board resolution into evidence creates an issue of fact as to whether the Board approved the resolution at all. Doc. 116, Def.'s Resp., 5. But NUL's July 23 letter explicitly states that the Board approved a resolution authorizing ULGD's disaffiliation on July 15, 2015. Doc. 113-1, Ex. 1-K, App., 0095–96; *see also* Ex. 1-J, App., 0086 (July 15 resolution regarding ULGD's disaffiliation stating that the recommendations of the Affiliate

---

Yet again, however, ULGD presents no evidence that the media obtained the letter through NUL or that ULGD suffered damages as a consequence of press coverage.

[5]The Court notes that even if NUL had not sent ULGD the June 18 notice that specifically complied with the requirements under the Affiliate Policies, Standards, and Procedures, the March 27 letter substantively complied with the requirement that NUL provide the affiliate notice of its non compliance. An attempt to create an issue of material fact based on a technicality will not persuade this Court.

Service Committee for disaffiliation are adopted).

ULGD has not presented any issues of material fact about whether NUL failed to perform. Therefore, because ULGD does not contest that a valid contract existed, that it breached that contract, or that NUL suffered damages as a result, there are no genuine issues of material fact about whether NUL established a successful breach of contract claim against ULGD. Therefore, this Court **GRANTS** summary judgment on NUL's breach of contract claim.

C. *Trademark Infringement*

NUL claims that ULGD's continued use of NUL marks after disaffiliation constitutes trademark infringement and seeks a permanent injunction to prevent ULGD from additional use. Doc. 112, Pl.'s Mem. Summ. J., 20. ULGD does not dispute that permission to use NUL marks terminates with disaffiliation but instead argues that because ULGD was not properly disaffiliated, its authorization to use NUL marks never terminated. Doc. 116, Def.'s. Resp., 5. Disaffiliation was proper. Therefore, the Court must determine whether ULGD's unauthorized use of NUL marks after disaffiliation constitutes trademark infringement.[6] As will be addressed, ULGD presents no issues of material fact that its continued use of the NUL marks after disaffiliation constitutes trademark infringment.

To establish trademark infringement, a plaintiff must demonstrate ownership of a legally

---

[6]Analysis of NUL's trademark infringement claim under 15 U.S.C. § 1114 will be dispositive of the outcome of its claim under 15 U.S.C. § 1125 and its Texas-law claims. *7-Eleven Inc. v. P.R.-7 Inc.*, No.3:08-CV-0140B, 2009 WL 4723199, at *8 n.14 (N.D. Tex. Dec. 9, 2009); *Hawkins Pro–Cuts v. DJT Hair, Inc.*, No. CA 3-96-CV-1728-R, 1997 WL 446458, at *5 (N.D. Tex. July 25, 1997) ("Similar to the claim for trademark infringement, an essential element to establish unfair competition under Texas law is a likelihood of confusion between the product of the plaintiff and that of the defendant."); *see also Interstate Battery Sys. v. Wright*, 811 F. Supp. 237, 244 (N.D. Tex.1993) ("Ordinarily, the same set of facts enabling a plaintiff to recover under 15 U.S.C. Section 1114 will enable recovery under 15 U.S.C. Section 1125.").

protectable mark and a likelihood of confusion between the marks. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235–36 (5th Cir. 2010). Proof of registration with the United States Patent and Trade Office is "prima facie evidence that the mark is valid and that the registrant has the exclusive right to use the registered mark in commerce with respect to the specified goods or services." *Id.* at 237. Whether there is a likelihood of confusion is determined by examining eight factors: "(1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products [or services]; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion, and (8) degree of care exercised by potential purchasers." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008). "The absence or presence of any one factor ordinarily is not dispositive; indeed, a finding of likelihood of confusion need not be supported by even a majority of the factors." *Id.* (quoting *Conan Props., Inc., v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985)).

### 1. Protectable Right in Service Marks

NUL has registered trademarks in both "Urban League" and the equality symbol. Doc. 113-1, Exs. 1 A-B, App., 0023–26. The former was registered in 1996 and the latter in 2014. *Id.* ULGD claims there is no evidence that NUL is a registrant, Doc. 116, Def.'s Resp., 20, but at the same time objects to the printouts from the USPTO that NUL submitted as evidence of its registration. Doc. 116, Def.'s. Resp., 7. ULGD alleges the printouts are inadmissible hearsay. *Id.* They are not inadmissible hearsay. Printouts from government web sites are self-authenticating under Federal Rule of Evidence 902(5). *Brown v. JNH Invs., Inc.*, No. 416-CV-00675-ALM-CAN, 2017 WL 3205716, at *2 (E.D. Tex. July 7, 2017); *Riverkeeper v. Taylor Energy Co., LLC*, 113 F. Supp. 3d 870, 881 n.52 (E.D. La. 2015). Printouts from government web sites also satisfy the public records exception to the

hearsay rule. *Riverkeeper*, 113 F. Supp. 3d at 881 n.52 (collecting cases). Thus, there is no genuine dispute of fact about whether NUL has a protectable right in its service marks.

  2.  Likelihood of Confusion

 "[F]alsely suggesting affiliation with the trademark owner in a manner likely to cause confusion as to source or sponsorship constitutes infringement." *Prof'l Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 670 (5th Cir. 1975). A strong risk of confusion occurs when a previously licensed affiliate continues to use the registrant's mark because "'[c]onsumers automatically associate the trademark user with the registrant and assume they are affiliated.'" *Hawkins Pro–Cuts v. DJT Hair, Inc.*, No. 3-96-CV-1728-R, 1997 WL 446458, at *5 (N.D Tex. July 25, 1997) (quoting *Burger King Corp. v. Mason*, 710 F.2d 1480, 1493 (11th Cir. 1983)). "Because of this risk, the Fifth Circuit has held that the continued use of a trademark by one whose trademark license has been canceled satisfies the likelihood of confusion test and constitutes trademark infringement."[7] *Id*.

 In this case, ULGD continued to use the NUL marks it had previously been authorized to use as an NUL affiliate after it was disaffiliated. Again, ULGD does not dispute this fact, but argues only that its disaffiliation was not proper. Doc. 116, Def.'s. Resp., 5. Because of the risk that consumers would continue to assume ULGD was affiliated with NUL even after it was disaffiliated, NUL has

---

[7] Though this likelihood of confusion test does not explicitly address the eight *American Rice* factors, it implicitly incorporates at least factors two, three, and four. When a previously authorized affiliate continues to use the same trademark as the trademark owner to advertise the same products or services as it did when it was authorized, the similarity of design (factor two), product or service (factor three), and consumers (factor four) between the marks will be very similar if not identical.

demonstrated a likelihood of confusion.[8] Therefore, this Court concludes that ULGD's continued use of NUL's marks constitues trademark infringement as a matter of law and **GRANTS** NUL's motion for summary judgment on its claims for federal and common law trademark infringement and unfair competition. Because NUL stated it would withdraw its dilution claims should this Court grant summary judgment, Counts V and VIII are **DISMISSED**.

*D. Permanent Injunction*

NUL seeks a permanent injunction to prevent ULGD from additional use of the NUL service marks. Doc. 111, Pl.'s Mot. Summ. J., 3. ULGD alleges that NUL has failed to present any evidence demonstrating NUL is entitled to a permanent injunction. Doc. 116, Def.'s Resp., 25–26.

A party seeking a permanent injunction must demonstrate:

"(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."

*Abraham v. Alpha Chi Omega*, 708 F.3d 614, 626–27 (5th Cir. 2013). "When a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods constitutes immediate and irreparable harm. . . . The injury lies in the fact that the plaintiff no longer can control its own reputation and goodwill." *Joy Mfg. Co. v. CGM Valve & Guage Co. Inc.*, 730 F. Supp.

---

[8]To the extent ULGD's inclusion of the *Dawn Donut* rule, Doc. 116, Def.'s Resp., 21, is an attempt to argue there is no likelihood of confusion because there is no concurrent use between NUL's use of its marks and ULGD's use of the same marks, this argument fails. *Dawn Donut Co. v. Hart's Food Stores, Inc.* establishes that when an unauthorized user of a registered mark uses the registrant's mark in a "sufficiently distinct and geographically separate market, with no likelihood the registrant will expand his use into defendant's market" there is no likelihood of confusion between the marks. 267 F.2d 358, 364 (2d Cir. 1959). Thus, only concurrent unauthorized use of a registered trademark may be enjoined. *Id*. NUL's decision to approve ULGD as an affiliate was a decision to expand NUL into the Dallas market. Therefore, ULGD's attempt to argue a lack of concurrent use fails.

1387, 1394 (S.D. Tex. 1989); *see also Hawkins Pro–Cuts*, 1997 WL 446458, at *7. Accordingly, the Court has previously found that a terminated franchisee's continued use of the franchisor's service marks suffices to establish irreparable injury. *See, eg.*, *7-Eleven Inc.*, 2009 WL 4723199, at *9. Because the harm lies in damage to the trademark owner's reputation and inability to control the quality of services by the unauthorized user, the harm is "difficult to pinpoint as compensable damages." *Hawkins Pro-Cuts, Inc.*, 1997 WL 446458, at *7.

When balancing the harms to the plaintiff and defendant, "courts usually hold that when defendants improperly use a plaintiff's trademark, the threatened harm to the plaintiff outweighs the threatened harm to the defendants." *7-Eleven Inc.*, 2009 WL 4723199, at *10. Finally, there is no adverse effect on the public interest when the injunction "would 'ensure compliance with both state and federal laws, as well as the parties' own agreement.'" *Id.* (quoting *Hawkins Pro-Cuts, Inc.*, 1997 WL 446458, at *8).

Once again, ULGD allegations that there is "no evidence" NUL is entitled to an injunction are merely conclusory statements and fail to present any issues of material fact. Doc. 116, Def.'s Resp., 26. NUL, however, has presented evidence that it is entitled to injunctive relief. ULGD's failure to operate according to NUL standards and policies coupled with its continued use of the NUL marks after disaffiliation resulted in NUL's inability to control the quality of the services offered under its name. This damage to NUL's reputation and goodwill cannot be cured through monetary relief. Further, since ULGD has not alleged enjoining its use of the NUL marks would cause it injury, the Court finds the harm to NUL outweighs any harm to ULGD. Finally, public interest is served by granting this injunction because enjoining ULGD's use prevents further infringement under state and federal laws and comports with the parties' agreement barring use of the NUL marks after

disaffiliation. Therefore, the Court **GRANTS** NUL's request for a permanent injunction and enjoins ULGD from further unauthorized use of NUL's marks.

## IV.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment, Doc. 111, is **GRANTED**.

**SO ORDERED.**

**SIGNED: September 29, 2017.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE